### HOLLADY v. HOLLADY.

#### SAME v. SAME.

1. Where executors made a final return, crediting themselves with debts paid, but not charging themselves with rents received from lands of the devisees, an order of the probate judge approving this return and striking a balance in favor of the executors cannot be pleaded as *res judicata* to an action afterwards brought by these devisees against the executors for the recovery of such rents.
2. Where an executor takes possession of lands of infant devisees, receives the rents, and applies them in part to the debts of the testator, he is liable to an action by these devisees for the surplus; and this right of action does not terminate with his life, but may be prosecuted against his executor.
3. The finding of fact by the master, concurred in by the Circuit Judge, that this executor had appropriated these rents to his own use, approved; and the judgment against his estate for such rents, less the *pro rata* liability of these devisees for the balance found in the executor's favor by the probate judge, affirmed.

Before COTHRAN, J., Greenville, July, 1885.

The opinion states the case.

*Messrs. Perry, Perry & Heyward,* for appellants.

*Messrs. Geo. Westmoreland* and *A. C. Welborn,* contra.

April 7, 1886.   The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   These were actions to account for the rents and profits of land.   They were brought by brothers in the same right, only differing in the amounts claimed.   They were heard together and they will be so considered; but, to prevent confusion, we will refer to the case of Edda, intending that what is said shall be considered as applying *mutatis mutandis* to that of Emory M.

Robert Hollady died in 1874, leaving a will, of which Henry Hollady and G. W. Hollady were the executors.   After making other dispositions, the testator, by the 6th clause of his will, devised directly to his sons, Emory M. and Edda (to be equally divided between them), a small tract of land, containing 192 acres, and known as the "Cooley tract."   At this time, and for some time afterwards, these two boys were both minors, living with their mother, and, as alleged, the executors took possession of the "Cooley land," and for several years received the rents and profits, which, as they claimed, were applied in payment of the debts of the estate.   In February, 1880, the debts all being paid, the executors, after formal publication, made a final settlement of the estate in the probate office, and were discharged.   In that settlement it was ascertained that the executors were in advance to the estate in the sum of $2,825.93; but it did not appear that they had ever charged themselves for the rents and profits received from the lands.   Nor was any effort made by the probate judge to ascertain how much had been received from the different devisees, or to adjust the amounts which they should respectively contribute to reimburse the executors for the amounts they had advanced for the estate.

In February, 1884, one of the executors, G. W. Hollady, died testate, and the defendant, John T. Chapman, is the sole executor of his will.   Some time afterwards Emory M. and Edda Hollady came of age—Emory first, who was then placed in possession of his half of the Cooley land, and afterwards Edda, 'to

whom was turned over the other half.   Each of them now brings his action against Henry Hollady, the surviving executor of his father's will, and John T. Chapman, the executor of the deceased executor, G. W. Hollady, for the rents and profits of their respective portions of the land, down to the time they were placed in possession of the same.   The defendant, Chapman, executor of the deceased executor, answered, denying knowledge or information sufficient to form a belief as to the allegations of the complaint, and pleading *plene administravit* as to the estate of his testator.

The case was referred to the master, S. J. Douthit, Esq., to report his conclusions of law and fact; and he, after taking the testimony, reported, among other things, "that Edda Hollady was a minor about eleven years of age when his father died; that the rent of his portion of the real estate devised to him and his brother by his father was worth one hundred dollars a year, on an average, during the time the executors received the same, and that the defendant, John T. Chapman, as executor of the will of G. W. Hollady, has not come into the possession of any property belonging to the estate of his testator," &c.   And as conclusions of law: "That the defendants, Henry Hollady and John T. Chapman as executor of the estate of G. W. Hollady, are liable to the plaintiffs for the rents and profits of his real estate from the death of Robert Hollady up to the final settlement of his estate, a period of six years, at one hundred dollars a year, with interest thereon from January 1 of each year after the same became due, less his *pro rata* of the amount found to be due them on said settlement, which, after making said deduction, he finds to be at this date the sum of six hundred and sixty-two dollars and sixteen cents ($662.16).   2nd. That the judgment should be given against the defendant, John T. Chapman, as executor of the estate of G. W. Hollady, subject to the plea of *plene administravit*, as it appears that he has never received anything on account of the estate of his testator," &c.

The cause came up on exceptions to this report, and Judge Cothran granted an order confirming it; and from this order John T. Chapman appeals to this court upon the grounds:   I. That the matter in controversy is *res adjudicata*.   II. That the

appellant, as executor of G. W. Hollady, cannot be made liable for mesne profits of land alleged to have been wrongfully held by the said G. W. Hollady. III. That, even if this were not true, the respondent here, having failed to prove that any of the profits of the land were appropriated by G. W. Hollady to his own use, it is submitted that he cannot recover.

First. As to the question of *res adjudicata.* It does not appear that the question was either made in the pleadings or submitted to the master, but if it had been, it could not have prevailed. The settlement of the estate in the probate office was a mere statement of the receipts and expenditures of the executors with a view to their discharge. It is true that devises must abate for the payment of debts, but it must be an abatement equal by all, in the same character. It would undoubtedly have been more satisfactory if, at that time, an account could have been taken of advancements of the different parties in the way of rents and profits, and how much more, if any, each devisee should contribute to reimburse the executors. It seems, however, that the executors did not ask for such accounting, but proceeded on the line that the rents and profits belonged to them, and the devisees were liable to them for the whole amount found in their favor by the Probate Court. In that view, the executors could require contributions only by a proceeding on the equity side of the Court of Common Pleas. As we understand it, the Probate Court had not jurisdiction to enforce the equity of executors to have contribution from devisees to refund debts of the testator paid by them; and having no jurisdiction of the question, it is, of course, not *res adjudicata.*

Second. As to the right of plaintiff to recover from the executor of G. W. Hollady rents and profits received by the testator in his lifetime from lands alleged to have been wrongfully held. That is to say, is this a proper case for the application of the principle, *actio personalis moritur cum persona ?* The test is whether "the deceased actually held the property of the plaintiff so as to derive a benefit therefrom, so that a promise to pay therefor could be presumed or implied, while an action for tort could not be maintained, yet the tort could be waived and *assumpsit* brought for the value of the property." 2 *Add. Torts,* 539; *Chaplin* v. *Barrett, Administrator,* 12 *Rich.,* 284; *Huff* v.

*Watkins*, 20 *S. C.*, 477. This is certainly not an action of trespass to try titles to the land, nor for damages *quare clausum fregit*, nor, as it seems to us, in form *ex delicto*.

It is true, a devise is a form of conveyance, subject, however, to the payment of the debts of the testator. As lands are liable for debts, executors, whose duty it is to provide for debts, have some qualified right to control lands devised, so far at least as debts are concerned. *Smith* v. *Grant*, 15 *S. C.*, 149. The plaintiff, devisee, was a minor without guardian. His devise was liable to abate for debts, and we do not see that the executors committed a bald trespass in receiving the rents and profits of it, to the extent of its *pro rata* share of contribution for the payment of the debts of the testator; but for any excess beyond that amount the profit was money had and received for plaintiff's use, which *ex equo et bono* belongs to him, and he may recover it from the executor. "It is an established principle of equity, that if one intrude upon the estate of an infant and take the profits thereof, he will be treated as a guardian and held responsible therefor to the infant, in a suit in equity." *Goodhue and wife* v. *Barnwell, Rice Ch.*, 198.

Third. But it is claimed that the plaintiff cannot recover, for the reason that "he failed to prove that any of the profits of the land were appropriated by the testator, G. W. Hollady, to his own use." That was a question of fact, which, after careful consideration, was decided by the master, who, as it happened, had also been the judge of probate when the executors made their final settlement in that court. Even if it had satisfactorily appeared that the executors applied the whole of the rents and profits received by them in payment of the debts of the estate, the result would have been the same; for they got credit for all the debts paid, and never charged themselves with the rents and profits, the effect of which was necessarily to appropriate the rents and profits to their own use. The master first found the amount of rents and profits received from the plaintiff's land by the executors, and after deducting from it "his *pro rata* of the amount found to be due the executors on settlement," gave judgment for the balance. In this the Circuit Judge concurred, and we cannot say that it was error.

The judgment of this court is that the judgment of the Circuit Court, in each of the cases stated in the caption of this opinion, be affirmed.